**UNITED STATES of America**

v.

**Christopher Peter RENDA, et al.**

**Crim. No. 83–00052–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

July 28, 1983.

Gregory Welsh, Asst. U.S. Atty., Richmond, Va., for plaintiff.

David E. Boone, Richmond, Va., for defendant.

OPINION

WARRINER, District Judge.

█ For reasons both practical and historical we have deemed it not only prudent but imperative that there be preemptive strictures against the *government* coercing confessions from persons accused of crime. Our fear of government oppression in this regard is evident in the Fifth Amendment to the United States Constitution. No confession, whether obtained while the accused is in custody or not, is admissible against the accused · if it were. coerced by the government.

█ Because custodial confessions are particularly suspect and because the facts surrounding such a confession are known only to the accused and the government, a prophylactic rule was erected in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) to give greater assurance that custodial confessions, when made, are made with the full understanding of the rights afforded an accused under our Constitution and laws. The *Miranda* rule is a per se rule. By that it is meant that the inquiry is not directed to whether the confession is voluntary or not; the inquiry is directed first to whether the *Miranda* warning was given. If it were not given, and if the confession be a result of custodial interrogation, then no matter how voluntary the confession, it is inadmissible.

█ In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) the Supreme Court constructed a sequel to the *Miranda* per se rule. This sequel is also a per se rule. Under *Miranda* a defendant is advised of his right to counsel. Under *Edwards* if he evidences a desire not to be interrogated absent counsel, interrogation must cease. It may not be resumed, in the absence of counsel, unless the accused initiates a subsequent interrogation. The initiation must be of a nature that indicates the accused's desire to engage in a colloquy with government personnel concerning his criminal activity.

The government argues that there is no *Edwards* per se rule. The government's argument is, I think, amply answered by footnote 2 of Justice Marshall's dissent in *Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). In *Bradshaw* both the four-man dissent and the four-man plurality agreed that *Edwards* had erected a per se rule. They also largely agreed on the nature of the rule. Though both the plurality and the dissent argued that their disagreement was over a matter of principle, it appears that they actually disagree as to whether, in fact, the question, "Well, what is going to happen to me now?", constituted initiating further interrogation. The plurality thought it did while the dissent argued that it was not sufficiently indicative of the accused's desire to reopen the subject.

In any event, only Justice Powell in his concurring opinion argued that no per se rule has been constructed. No matter how persuasive the argument set forth in a one-man Supreme Court dissent may be, it cannot be permitted to sway a district court judge. Thus this Court must apply the two-step per se rule constructed in *Edwards* and explicated in *Bradshaw*. The first step requires a showing that the accused initiated a post-counsel-request colloquy. The second step requires an analysis of totality of the circumstances to determine whether a valid waiver of the right to counsel and the right to silence occurred.

Having a fugitive arrest warrant for defendant Christopher Peter Renda (hereinafter Renda) and having cause to believe that he had in his possession weapons and drugs in violation of the criminal law, federal marshals effected an arrest of Renda at his motel room in Chesterfield County. Having been induced to come out of the hotel room, he was arrested, handcuffed, and placed in a deputy's automobile located just steps from the door. Immediately when he was placed in the car and with no thought or intent to interrogate Renda, a deputy marshal read Renda his *Miranda* rights and asked him whether he wanted to make a statement. Renda responded that he preferred not to make a statement until he had seen a lawyer. It must be borne in mind that marshals generally handle prison escapes and fugitive warrants. They do not investigate drug crimes nor illegal weapons. The evidence indicates that though the deputy marshal had no interrogation in mind, the crime which he was authorized by his duties to investigate was the crime for which Renda was arrested, bail jumping.

While the colloquy between the deputy marshal and Renda was taking place in the back seat of the automobile, federal marshals and Chesterfield County police were conducting a "protective sweep" of Renda's motel room. There they found a person subsequently indicted as an accomplice, they found bombs, drug paraphernalia, and a quantity of cocaine. Subsequently, Renda's van was searched and a machine gun and silencers along with other weapons were seized. Renda was taken before a magistrate and charged with drug and weapon offenses. He was placed in jail to await action by the grand jury.

The deputy marshal who had been advised by Renda that Renda did not desire to answer questions until he had seen a lawyer made no report of the incident to anyone. He considered the matter wholly routine and not worthy of comment or report. Thus when, two days later, an agent of the Alcohol, Tobacco and Firearms Division and the Drug Enforcement Administration went to the jail to interrogate Renda, they had no knowledge that Renda had at any time or in any way indicated a desire that he not be interrogated out of the presence of a lawyer. Further, the criminal activities which were the intended subject of their interrogation lay outside the areas of law enforcement responsibility of the deputy marshal who had read Renda his rights.

The two officers requested the jailor to bring Renda to an interrogation room. With no prior indication on the part of Renda that he sought the meeting, he was conducted to the room. The federal officers identified themselves to Renda and one of them read him his *Miranda* rights. The officer indicated that he wanted to question

Renda with respect to firearms. Renda thereupon voiced his thorough understanding of his right to remain silent and his right to counsel. Both orally and in writing he gave evidence of his desire to waive those rights. He stated that he wanted to respond to the officers' questions to protect his daughter, co-defendant, Judith Ann Renda. She had been the person present with him in the motel room and thus was subject to charges for possession of the bombs and of cocaine and drug paraphernalia. In order to clear his daughter Renda confessed that all of the goods seized in the room and in the van were his, that he was the sole owner and possessor of the seized goods, and that his daughter had no interest or right of possession in them.

The Court has observed Renda at arraignment and at his appearance at the suppression hearing and has an impression that Renda is a man of at least average intelligence, probably of middle class background, is middle-aged, is not suffering from any mental or emotional infirmity, is fully able to appreciate and understand the predicament he is in, and is able to make a sensible decision that a confession on his part could well serve his family interest by exonerating his daughter.

Under all the facts and circumstances of the case, the Court is wholly convinced that the confession was in no sense coerced, that it was completely voluntary, that it was made with a full understanding of his rights, and that Renda intended and desired specifically to waive his right to the presence of counsel with respect to the firearms and drug charges.[1] Indeed, when the conversation shifted from the firearms and drugs to his possible involvement in blowing up an automobile in Pennsylvania in 1981, he immediately indicated his disinclination to answer any questions with respect to that crime in the absence of counsel. Thus Renda demonstrated his ability to differentiate between crimes he was willing to talk about in the absence of counsel and crimes he was unwilling to talk about in the absence of counsel. Under any rule based solely upon the totality of the circumstances there could be no valid question that the confession is admissible and ought not to be suppressed.

But I have got the cart before the horse. As noted above the per se rule is a two-step rule. The second step is an examination of the totality of the circumstances. The first step is the initiation of the post-counsel-request interrogation *by the accused.* It is simply not a fact that the accused initiated the interrogation in question. Under the per se rule that ends the inquiry. No matter how voluntary, free, informed, intelligent, and uncoerced be the confession and the waiver, under the Supreme Court's *Edwards* rule, the confession is not admissible.

This is the danger of per se rules. They may very well make sense in most cases but in a given case frustrate legitimate efforts, with no taint of government misbehavior, to bring criminals to book. In my opinion the per se rule as applied in this case does just that. This case highlights the wisdom of Justice Powell's concurring opinion in *Bradshaw* where he said " . . . the question of whether a suspect has waived this important right to counsel is uniquely one of fact, and usually must and should be left to the judgment of the trial court that has the benefit of hearing the evidence and assessing the weight and credibility of testimony." *Oregon v. Bradshaw,* —— U.S. ——, ——, 103 S.Ct. 2830, 2838, 77 L.Ed.2d 405 (1983) (Powell, Jr., concurring).

The motion to suppress the confession must be and is GRANTED.

And it is so ORDERED.

---

1. He has not testified nor filed an affidavit to the contrary.