Robert Lee BOLES, Jr., Petitioner-Appellant,

v.

Dale FOLTZ, Warden, Respondent-Appellee.

No. 85–1469.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 28, 1986.

Decided April 24, 1987.

Rehearing and Rehearing En Banc Denied June 23, 1987.

David M. Lawson (argued), Lizza and Mulcahy, P.C., Detroit, Mich., for petitioner-appellant.

Thomas A. Kulick (argued), Dept. of Atty. Gen., Corrections Div., Lansing, Mich., for respondent-appellee.

Before KENNEDY, Circuit Judge; CONTIE, Senior Circuit Judge; and GIBSON *, District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Petitioner-appellant Robert Lee Boles, Jr. ("petitioner") appeals the District Court's denial of his petition for writ of habeas corpus. Petitioner claims on appeal that: 1) his statements at a July 24, 1978 arraignment on an unrelated larceny charge constituted a request for counsel and his confession to murder at a subsequent interrogation was therefore inadmissible; 2) the admission of a second confession and its derivative evidence was not harmless beyond a reasonable doubt; 3) neither confession was voluntary; and 4) the prosecutor's use of peremptory challenges systematically excluded blacks from the jury and violated petitioner's right to a fair and impartial jury. For the reasons stated below, we affirm the District Court's decision denying petitioner's petition for writ of habeas corpus.

Petitioner was convicted of first degree murder under Mich.Comp.Laws § 750.316 in a case involving a shooting in Saginaw, Michigan, on July 22, 1978. On that afternoon, the victim, Clyde Letson, was washing his truck at a self-service car wash. His daughter Holly was with him. A man approached Letson and began talking to him. The man shot Letson twice, bent over him, took something from his pocket, and ran away. Letson died shortly thereafter. Thirty to forty people were at the scene at the time of the shooting.

Petitioner was arrested the day following the shooting for an unrelated offense. He was apparently also a suspect in the shooting. On the next day, July 24, petitioner

---

* The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation.

was arraigned on the unrelated offense of larceny. At the larceny arraignment, the following exchange took place:

> The Court: Mr. Boles I assume you desire to have a Preliminary Hearing on this matter, is that correct?
>
> Mr. Boles: Yes I do Your Honor.
>
> The Court: Okay.
>
> Mr. Boles: My, my ah, attorney appear here right now.
>
> The Court: What's that?
>
> Mr. Boles: I wanted to ah, want a little advise to—I want to hear the Preliminary ...
>
> The Court: Oh please don't put anything on the record at this time. Don't talk at this time. Wait until after you talk to your lawyer, do you understand?
>
> Mr. Boles: All right.
>
> The Court: I'm going to set your hearing for the 4th day of August.
>
> Mr. Boles: All right.
>
> The Court: Now how about a lawyer, can you afford to hire your own lawyer ah, Mr. Boles?
>
> Mr. Boles: Yes I got one.
>
> The Court: You have one, okay.

Joint Appendix at 140–41.

On July 25, petitioner appeared in a line-up related to the murder and a third offense, felonious assault and unarmed robbery. The same day police officers, acting on a search warrant, found a tool check in petitioner's car which corresponded to tool checks belonging to the victim. On July 27, petitioner was booked on an open murder charge. On July 28, at noon, he was advised of his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and waived them in writing. He was then interrogated and confessed to the murder of Letson. At 2:15 that same afternoon, petitioner was arraigned on the felonious assault charges. He requested that the court appoint an attorney for him. A short time later, the police returned and took petitioner to the locations at which he claimed to have disposed of the murder weapon and the victim's wallet. On the way to these locations, the officers advised petitioner of his rights and reinterrogated him on tape. He

again confessed to murder. The wallet was found in a trash can, but the gun, which petitioner claimed to have thrown in a river, was never found. On July 31, petitioner was arraigned on an open murder warrant.

At a pretrial *Walker* hearing, *People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965), petitioner moved to suppress both confessions. He claimed that his statements were obtained involuntarily and in violation of his right to have counsel present during interrogation. The state trial court concluded that both confessions were knowingly and voluntarily made and they were admitted into evidence. The victim's wallet was also admitted into evidence. Petitioner was convicted of first degree murder and sentenced to life imprisonment. The conviction was affirmed by the state appellate court and petitioner's application for leave to appeal to the state supreme court was denied.

Petitioner filed his petition for writ of habeas corpus on July 9, 1982, in the District Court for the Eastern District of Michigan. The District Court initially conditionally dismissed the petition for failure to exhaust available state remedies. *Boles v. Foltz*, 559 F.Supp. 1302 (E.D.Mich.1983). Petitioner amended his complaint and argued that his confessions were involuntary, the result of a delayed arraignment and taken in violation of his right to counsel. In addition, he challenged the search of his car and the jury selection process. The District Court denied relief on the last two claims. Regarding the confessions, it held that petitioner's statements at the first arraignment did not constitute a fifth amendment request for counsel and thus the first confession was properly admitted at trial. The Court found that the second confession was not properly admitted because petitioner had requested counsel at the second arraignment, but that admission of the second confession was harmless error. Finally, the Court held that both confessions were voluntary. Petitioner appeals the District Court's denial of his petition for writ of habeas corpus.

## I.

Petitioner claims on appeal that his statements at the larceny arraignment constituted a request for counsel and that the subsequent interrogation was in violation of his fifth amendment rights. The District Court found that "a fair reading of the transcript at the first arraignment shows that Petitioner did not invoke his Fifth Amendment right to have counsel present during interrogation." District Court Opinion at 15–16. We agree.

■ The Supreme Court has held that "when an accused has invoked his right to have counsel present during custodial interrogation, ... [the accused] is not subject to further interrogation by the authorities until counsel has been made available." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). In this case, however, petitioner did not invoke his fifth amendment right at the larceny arraignment. Petitioner stated that he had an attorney and that he wanted that attorney present at the preliminary hearing. His statements did not express "his desire to deal with the police only through counsel." *Id.* at 484, 101 S.Ct. at 1884. Although the law does not require a defendant to indicate whether a request for counsel is based on the fifth amendment privilege against self-incrimination or the sixth amendment right to be represented by counsel during judicial proceedings, *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 1409 n. 7, 89 L.Ed.2d 631 (1986), where it is clear that the defendant's request is for something other than the presence of an attorney during interrogation, the request should be so construed. The Supreme Court applied this reasoning in a recent case in which a defendant stated that he was willing to give an oral statement to police but that he would not give a written statement unless his attorney was present. *Connecticut v. Barrett*, —— U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). The Court held that "[t]o conclude that respondent invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of re-

spondent's statement." *Id.* 107 S.Ct. at 832. In the case before us the ordinary meaning of petitioner's statements is that he wished to have his attorney present at the preliminary hearing. We find that petitioner did not invoke his right to have counsel present during interrogation and thus his first confession was properly admitted into evidence.

## II.

■ Petitioner also challenges the admission into evidence of his second confession and its derivative evidence. He argues that his request at the second arraignment that counsel be appointed invoked his right to have counsel present at the second interrogation. He asserts that the admission of the taped second confession, and the wallet and tool check found as a result of that confession, was improper. The District Court held that petitioner had invoked his right to have counsel present during interrogation and that admission of the second confession and its derivative evidence was improper. It also held, however, that admission of that evidence was harmless beyond a reasonable doubt.

The District Court found that petitioner had invoked his rights under *Edwards,* stating that "[u]nless a defendant has clearly indicated that he desires counsel for something other than help during police interrogation, the Court should assume that his request for counsel at arraignment invokes his Fifth Amendment right." District Court Opinion at 10. Because the police proceeded with the second interrogation outside of the presence of counsel, the District Court held that petitioner's rights had indeed been violated and the second confession improperly admitted into evidence.

The District Court also found, and we agree, that admission of the confession and its derivative evidence was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court found first that "[p]etitioner's taped confession was merely a reiteration of his first confession and therefore cumulative." District Court

Opinion at 16. It also stated that because in his testimony petitioner had admitted having had the wallet, its admission at trial was not material. The Court noted the incriminating testimony of three witnesses at trial, and held that "[c]ontrasting the amount of prejudice against the quantum of evidence, this Court is constrained to find the errors harmless beyond a reasonable doubt." *Id.* at 17–18 (citing *Bailey v. Hamby,* 744 F.2d 24 (6th Cir.1984)). The Court separately addressed the admission of the tool check into evidence and held that, although the question was a close one, its admission was also harmless. We find the analysis of the District Court to be correct and affirm its decision regarding petitioner's second claim.

### III.

Petitioner next asserts that his confessions were involuntary. He cites the fact that at the time he was twenty-two years old, had a ninth grade education, and was barely able to read or write. He testified at trial that he was never advised of his rights in accordance with *Miranda* and was told by police officers that he would certainly receive a life sentence if he did not confess. He also asserts that he asked the interrogating officer when he would receive an attorney. Contrary to petitioner's testimony, the interrogating officer, Officer Bradley, testified that petitioner had been advised of his rights, had not been promised anything or threatened, and had not requested to see an attorney. The state trial court found that petitioner had been advised of his rights and that the confession was admissible. The state court of appeals affirmed these findings.

We affirm the District Court's finding that petitioner did not meet his burden of proving that the confession was involuntary. In a federal habeas action, the burden of proving that the confession was involuntary rests with the petitioner. *Jurek v. Estelle,* 623 F.2d 929, 937 (5th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). Furthermore, voluntariness need only be proven by a preponderance of the evidence. *Lego v.*

*Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In this case, the trial court and the state appellate court disbelieved petitioner's claims that he had never been advised of his rights, that he had been threatened, and that he asked for an attorney. The state court's findings of fact are conclusive if fairly supported by the record. *See Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985). The District Court found, and we agree, that the state court's findings were supported by the record and it held that petitioner's confessions were not involuntary.

### IV.

Petitioner finally challenges the jury selection process. He claims that his constitutional right to a fair and impartial jury was violated because the prosecutor used her peremptory challenges to systematically exclude blacks from the jury. The District Court dismissed this claim on the basis of *Swain v. Alabama,* in which the Supreme Court held that a defendant could not establish a violation of the Equal Protection Clause solely on proof of the prosecutor's action at defendant's trial. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The Supreme Court in *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), announced a new standard for proving unconstitutional abuse of peremptory challenges. We affirm the District Court's dismissal of petitioner's claim, however, because the Supreme Court recently held that *Batson* should not be applied retroactively on collateral review of convictions that became final before *Batson* was announced. *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). Because petitioner's conviction was final prior to the announcement of the new standard, the standard in *Swain* would control in petitioner's case. We affirm the District Court's dismissal of petitioner's challenge on the basis of *Swain.*

### V.

We affirm the District Court's denial of petitioner's petition for writ of habeas corpus.

BENJAMIN F. GIBSON, District Judge, dissenting.

For the reasons stated in the following opinion, I dissent.

Petitioner argues that he invoked his right to counsel at the larceny arraignment and that therefore the first interrogation abridged his Fifth Amendment right to counsel pursuant to *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[1] In *Edwards,* the Supreme Court found a violation of the Fifth Amendment right to counsel during custodial interrogation where, subsequent to defendant's request for counsel, a confession was obtained by police-initiated questioning. In finding the constitutional violation, the Court ruled:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. [Moreover,] an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. Recently, *Edwards* has been applied by analogy, on the basis of the Sixth Amendment, to cases involving requests for counsel during arraignment. *Michigan v. Jackson/Bladel,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The question before us is whether petitioner's statements at the larceny arraignment implicated his Fifth Amendment right to counsel and if so, whether the holding of *Edwards* barred subsequent police-initiated interrogation on an unrelated offense.[2]

Petitioner challenges the propriety of the district court's conclusions regarding petitioner's statements at the larceny arraignment. The district court found that petitioner requested counsel for purposes of a preliminary hearing, however, it concluded that the request did not invoke petitioner's Fifth Amendment rights.[3] The question of whether petitioner made a request for counsel is a mixed question of law and fact and is therefore subject to independent review by this court. *Bailey v. Hamby,* 744 F.2d 24, 26 (6th Cir.1984). Upon review of the record, I am of the opinion that the district court erred in concluding that petitioner did not invoke his Fifth Amendment right to counsel at the arraignment.

In *Maglio v. Jago,* 580 F.2d 202 (6th Cir.1978), and cases thereafter, *see Bailey v. Hamby,* 744 F.2d at 26, this court has consistently given a broad rather than narrow interpretation to a defendant's request for counsel. This approach has been embraced by the Supreme Court in *Jackson/Bladel.* In discussing the issue of waiver of the Sixth Amendment right to counsel, the Court noted that "doubts must be resolved in favor of the constitutional claim" and it concluded that "this settled approach to questions of waiver requires us to give broad, rather than a narrow, interpretation to a defendant's request for counsel." 106 S.Ct. at 1409. The recent

---

**1.** I note that the Fifth Amendment does not specifically provide a "right to counsel," *See Moran v. Burbine,* 475 U.S. 412, —— n. 1, 106 S.Ct. 1135, 1142 n. 1, 89 L.Ed.2d 410 (1986). However, in *Miranda,* the Supreme Court held that the Fifth Amendment privilege against self-incrimination incorporates a right to counsel during custodial interrogation. 384 U.S. at 469, 86 S.Ct. at 1625. *See also Edwards,* 451 U.S. at 485–86, 101 S.Ct. at 1885. This right is distinct from that guaranteed by the Sixth Amendment.

**2.** The issue of whether a request for counsel at arraignment implicates Fifth Amendment rights

was recognized but not addressed by the Court in *Jackson/Bladel,* 106 S.Ct. at 1408 n. 4.

**3.** Specifically, the district court reached the following conclusion:

> "A fair reading of the transcript at the first arraignment shows that petitioner did not invoke his Fifth Amendment right to have counsel present during interrogation. Instead, he merely wished to talk to his attorney to ask him his advice about whether to have a preliminary examination or not."

case of *Connecticut v. Barrett,* —— U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), further supports the proposition that requests for counsel should be broadly interpreted. In *Barrett,* the Supreme Court held that requests for counsel must be given broad all-inclusive effect "where the defendant's words, understood as ordinary people would understand them, are ambiguous." *Id.,* 107 S.Ct. at 832. The defendant's request for counsel in *Barrett* was found to be unambiguous, and therefore not subject to broad interpretation, because "his limited requests for counsel [for purposes of a written statement] ... were accompanied by affirmative announcements of his willingness to speak with the authorities." *Id.* Thus any doubts about the defendant's precise wishes regarding representation or about his understanding of the nature of the right to counsel was clarified by an explicit waiver of the right to silence. *See Id.,* 107 S.Ct. at 833. (Brennan, J., concurring). However, a partial invocation of the right to counsel without such clarification may be appropriately considered ambiguous.[4]

In the instant case, contrary to the majority opinion, I find that it is not clear that petitioner merely requested counsel for purposes of a preliminary examination. The record reflects that petitioner never made any concise statements regarding the nature of his request for counsel and that he was restricted by the judge before he had an opportunity to do so. Petitioner's fragmented statements regarding counsel are undeniably equivocal and their meaning should not have been limited. However, even if the petitioner's statements could be construed as a limited invocation of the

right to counsel, they were not accompanied by any affirmative statements, as in *Barrett,* which clarify the petitioner's precise wishes regarding representation and indicate his intention to waive rights not specifically invoked. Petitioner's statements, as understood by ordinary people, are therefore ambiguous and entitled to broad interpretation.

Broadly analyzing petitioner's statements with indulgence for the constitutional claim, I am convinced that the statements provide adequate notice that petitioner desired to speak with an attorney prior to further dealing with the authorities. I would therefore conclude that petitioner invoked his Fifth Amendment right to counsel during interrogation, notwithstanding the fact that the request was made at a prior arraignment.[5] In reaching this conclusion, I decline to adopt the view of some courts, which distinguish a Fifth Amendment request for counsel solely on the wording of the request and to whom it is made.[6]

The determination as to whether an accused has invoked his or her Fifth Amendment right to counsel should not rest upon whether or not, or how clearly, he or she has articulated the reasons for which counsel is desired. The average person is unaware that there exists both a Fifth Amendment right to counsel at custodial interrogation, as created by *Miranda, see supra* note 4, and a Sixth Amendment guarantee of the assistance of counsel during adversary proceedings. *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). An accused may not know or contemplate that different rights

---

4. "[A] partial invocation of the right to counsel, without more, invariably will be ambiguous. It gives rise to doubts about the defendant's precise wishes regarding representation and about his or her understanding of the nature and scope of the right to counsel. Thus, the police may not infer from a partial invocation of the right to counsel *alone* that the defendant has waived any of his or her rights not specifically invoked." *Barrett,* 107 S.Ct. at 835 (Brennan, J., concurring).

5. In *Silva v. Estelle,* 672 F.2d 457 (5th Cir.1982), the court held that a request to telephone counsel, made at arraignment, constituted an exer-

cise of the right to counsel. *See also United States ex rel. Karr v. Wolff,* 556 F.Supp. 760 (N.D.Ill.1983), *vacated on other grounds,* 732 F.2d 615 (7th Cir.1984).

6. *Collins v. Francis,* 728 F.2d 1322, 1333 (11th Cir.1984) (Defendant's request for counsel during arraignment did not indicate a desire to invoke Fifth Amendment rights but only indicated that he desired counsel in the Sixth Amendment sense, to handle his case). *See also Jordan v. Watkins,* 681 F.2d 1067 (5th Cir.1982). *But see Silva v. Estelle,* 672 F.2d at 457.

might be invoked based on the wording of the request, or based on the fact that the request is made to a judge as opposed to the police. A request for counsel is an assertion by an accused that he or she needs help in *any* further dealings with the authorities, including custodial interrogation. Any such request, whether before a judge or the police, should be considered as a *per se* invocation of Fifth Amendment rights. To hold otherwise, based on factors which an accused cannot reasonably contemplate, would deprive the accused of the fullest extent of constitutional protection. As Justice Marshall commented regarding the applicability of *Edwards* and the Fifth Amendment implications of a request for counsel at arraignment:

> [A]n accused is under no obligation to state precisely why he wants a lawyer. If we were to distinguish cases based on the wording of an accused's request, the value of the right to counsel would be substantially diminished. As we stated in *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979), "an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." ... [Furthermore], it is no more safe to assume that a waiver is valid when an accused has made a prior request to the judge at his arraignment than when he has made the request to police. In both cases, the accused informs an individual in authority that he would like an attorney—and yet shortly thereafter, state officials, apparently disregarding his request, ask him to waive his rights.

*Johnson v. Virginia*, 454 U.S. 920, 922–23, 102 S.Ct. 422, 424, 70 L.Ed.2d 231, 232 (1981) (Marshall, J., dissenting from denial of *certiorari*). I also concur with the recent reasoning of the Michigan Supreme Court, as adopted by the U.S. Supreme Court in *Jackson/Bladel:*

> Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation to a defendant who makes an identical request to a judge. The simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly. 421 Mich. [39], at 63–64, 365 N.W.2d [56], at 67 [1984].

106 S.Ct. at 1409 n. 7. My conclusion herein is consistent with our opinion in *United States v. Campbell*, 721 F.2d 578 (6th Cir. 1983), wherein we held that statements obtained at the initiative of secret service agents, after a request for counsel at arraignment, violated the defendant's Sixth Amendment right to counsel as well as his Fifth Amendment right against self-incrimination pursuant to *Edwards*. *Campbell* stands for the proposition that a request for counsel at arraignment invokes Fifth Amendment rights which are subject to prophylactic rule of *Edwards*.

Having determined that petitioner invoked his Fifth Amendment right to counsel at arraignment, the issue of whether *Edwards* extends to preclude subsequent police-initiated questioning regarding a different offense than that for which counsel was requested must be considered. There is a split of authority among courts which have reached the issue,[7] and those which

---

7. The following cases have extended the *Edwards* rule to unrelated offenses: *White v. Finkbeiner*, 687 F.2d 885 (7th Cir.1982) (White III), *vacated sub nom. Fairman v. White*, 465 U.S. 1075, 104 S.Ct. 1433, 79 L.Ed.2d 756 (1984), *on remand*, 753 F.2d 540 (7th Cir.1985) (Court rejected an analogy to *Mosley* and held that the right to counsel with respect to one charge bars further interrogation even as to unrelated offenses); *United States ex rel. Karr v. Wolff*, 556 F.Supp. at 765 (Court rejected *Mosley* analogy and held that defendant who has asserted right to counsel in one jurisdiction may not be questioned by officers from another jurisdiction on

have declined to extend *Edwards* have done so based on factual distinctions or by analogizing the decisions of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In *Mosley,* the Supreme Court considered the propriety of questioning a suspect about an unrelated crime, after the suspect had invoked his Fifth Amendment right to remain silent. As I find historical distinctions between the right to silence and the right to counsel, I consider *Mosley* inapposite to the present case.

In *Miranda,* the Supreme Court distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney. With respect to the right to silence, the court stated that "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicated in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473, 86 S.Ct. at 1627. The assertion of the right to counsel was considered as a separate and significant event which mandated a separate procedure: "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present ... If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." *Id.* at 474, 86 S.Ct. at 1628. In *Mosley,* the Supreme Court made specific reference to *Miranda's* distinction between the levels of procedural safeguards triggered by a request to remain silent and a request for an

attorney. 423 U.S. at 105 n. 10, 96 S.Ct. at 326 n. 10; *see also Id.* at 109–11, 96 S.Ct. at 329–30 (White, J., concurring). The Court recognized that a request for counsel, pursuant to *Miranda,* bars further interrogation until counsel is present. *Id.* at 104 n. 10, 96 S.Ct. at 326 n. 10. However, it found that no such *per se* proscription of further questioning, by officers on any subject, exists when a person in custody has indicated a desire to remain silent. *Id.* at 103–04, 96 S.Ct. at 326. The Court therefore held that reinterrogation is not a violation of the right to silence where that right was "scrupulously honored." *Id.* It further found that reinterrogation about an unrelated offense was not inconsistent with a prior assertion of the right to silence. *Id.* at 105–06, 96 S.Ct. at 327. The Court clearly indicated, however, that its decision is prefaced only on an analysis of the procedures involved with an assertion of the right to silence. *See Id.* at 102 n. 7, 96 S.Ct. at 325 n. 7. In contrast, *Edwards* sets forth the procedures involved when the right to counsel is invoked. In *Edwards,* the Supreme Court reconfirmed the historical distinction as set forth in *Miranda* and *Mosley,* and gave it substantive effect by creating the *per se* rule against police-initiated questioning once the right to counsel has been invoked.[8] 451 U.S. at 485–86, 101 S.Ct. at 1885. While *Mosley* involves questioning on an unrelated offense, it is not applicable by analogy, as its analysis concededly rests on the lesser standard of waiver applicable to the right to silence.

unrelated offense); *State v. Routhier,* 137 Ariz. 90, 669 P.2d 68 (1983); *Radovsky v. Maryland,* 296 Md. 386, 464 A.2d 239 (1983); *See also United States v. Renda,* 567 F.Supp. 487 (E.D.Va. 1983); *United States ex rel. Kimes v. Greer,* 527 F.Supp. 307 (N.D.Ill.1981); *People v. Hammock,* 121 Ill.App.3d 874, 77 Ill.Dec. 322, 460 N.E.2d 378 (1984).

The following have declined to extend *Edwards* to unrelated offenses: *State v. Willie,* 410 So.2d 1019 (La.1982) (*Edwards* rule against police-initiated questioning after request for counsel inapposite where different officers interrogated defendant about unrelated offenses); *State v. Harriman,* 434 So.2d 551 (La.App.1983) (Defendant who has invoked his right to counsel on one offense may be questioned by officers of

another agency on unrelated matter when those officers are unaware of previous invocation of counsel); *McFadden v. Commonwealth,* 225 Va. 103, 300 S.E.2d 924 (1983); *State v. Cornethan,* 38 Wash.App. 231, 684 P.2d 1355 (1984). *See also State v. Bauguss,* 310 N.C. 259, 311 S.E.2d 248 (1984); *State v. Newton,* 682 P.2d 295 (Utah 1984).

**8.** The distinction between the standards of waiver applied in *Edwards* and *Mosley* has been widely recognized. *United States v. Udey,* 748 F.2d 1231, 1241 (8th Cir.1984); *United States v. Terry,* 702 F.2d 299, 318 (2nd Cir.1983); *United States ex rel. Riley v. Franzen,* 653 F.2d 1153, 1158 (7th Cir.1981); *Christopher v. Florida,* 582 F.Supp. 633, 644 (S.D.Fla.1984).

The *per se* language of *Edwards* is unequivocal. It precludes "further interrogation by the authorities until counsel has been made available." 451 U.S. at 485–86, 101 S.Ct. at 1885. A narrow interpretation of this language, permitting questioning on unrelated matters, renders the *per se* aspect of the opinion meaningless and allows the police to create an atmosphere of tension thereby intimidating suspects into waiving their Fifth Amendment rights. An assertion of the right to counsel is an expression by the accused that he is not competent to deal with the authorities without legal advice, thus "a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." *Mosley,* 423 U.S. at 111 n. 2, 96 S.Ct. at 329 n. 2 (White, J., concurring). *See also Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884–85. This reasoning is equally presuasive in the context of questioning on unrelated offenses. An accused who has invoked the right to counsel should not be subject to the greater, but more indirect, coercive pressures involved in questioning on numerous unrelated offenses. I would therefore conclude that once the right to counsel is asserted, *Edwards* applies to preclude police-initiated interrogation regarding unrelated offenses.

Although the police in this case, unlike *Edwards,* were unaware of the petitioner's prior request for counsel, I do not consider that fact to be significant. Once a defendant invokes his right to counsel, that knowledge is imputed to all law enforcement officials. Therefore, the fact that subsequent interrogating officers are unaware of such invocation is irrelevant to the question of whether a constitutional right has been violated. *Johnson v. Virginia,* 454 U.S. at 924, 102 S.Ct. at 424 (Marshall, J., dissenting) (knowledge of petitioner's request for counsel at arraignment imputed to police); *United States v. Scalf,* 708 F.2d 1540 (10th Cir.1983); *White III,* 687 F.2d at 887–88 n. 9; *United States ex rel. Karr v. Wolff,* 556 F.Supp. at 765; *United States v. Renda,* 567 F.Supp. at 487; *See also United States ex rel. Kimes v. Greer,* 527 F.Supp. at 310 (good faith of officer who questioned suspect after request for counsel is irrelevant).

The application of *Edwards* in this instance leads to the conclusion that the state did not establish a valid waiver of petitioner's Fifth Amendment right to counsel. The inquiry, under *Edwards,* is whether the accused initiated conversation with the police after invoking his right to counsel. The record clearly indicates that petitioner's statement was elicited by police, after his request for counsel at arraignment. A valid waiver was not established by petitioner's subsequent signing of *Miranda* waiver forms. As the police conduct clearly violated the prophylactic rule of *Edwards,* the first confession was improperly obtained and should not have been admitted at trial. As a result of this disposition, it is unnecessary to reach the other issues addressed by the majority.

I would therefore reverse the order of the district court and remand this case with directions to issue petitioner's writ of habeas corpus.