872 F.2d 1029
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald CALDWELL, Defendant-Appellant.
 No. 88-6001.
 United States Court of Appeals, Sixth Circuit.
 April 21, 1989.
 
 Before KRUPANSKY and WELLFORD, Circuit Judges, and JOHN W. BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In the instant case we must decide the merits of a motion to suppress incriminating statements made by appellant Caldwell to various law enforcement officials. Appellant claims that he requested an attorney on several occasions, and that his statements should be suppressed because counsel was never appointed. The law enforcement officials involved all testified that the appellant gave the statements voluntarily and expressly waived his right to an attorney. After weighing the evidence, the district court found that appellant had not requested an attorney and denied appellant's motion to suppress. We affirm. The decision of the district court was largely a determination of credibility of the witnesses.
 
 
 2
 In early November 1985, Caldwell and an accomplice robbed a bank in Bradfordsville, Kentucky. On March 3, 1987, appellant was arrested by the Economy Borough, Pennsylvania, police for an unrelated residential burglary.[1] Following his arrest, appellant was taken to the local police station and advised of his rights. After discussing this burglary, appellant informed the police that he had information pertaining to a bank robbery somewhere in Kentucky. Thomas Harrington, Chief of the Economy Borough Police then contacted the FBI, and was eventually referred to Special Agent William Lintz, the new field officer in Beaver County, Pennsylvania. During the time that Harrington was trying to contact the FBI, appellant requested one of the jail counselors to contact the FBI about a Kentucky bank robbery.
 
 
 3
 On March 10, 1987, Agent Lintz conducted an initial interview with appellant. Appellant signed a waiver of rights form and then indicated that he had been involved in the Kentucky bank robbery and that he would exchange information on this bank robbery in return for a concurrent sentence in a federal institution on the bank robbery offense and his pending Pennsylvania charges.
 
 
 4
 After further investigation, Agent Lintz discovered an unsolved bank robbery which had occurred in November 1985 in Bradfordsville, Kentucky. Lintz contacted the District Attorney's office and arranged to meet with appellant on March 16, 1987. The purpose of the March 16 meeting was to take appellant's statement about the Pennsylvania burglary and the Kentucky bank robbery. The appellant, Agent Lintz, Chief Harrington, attorneys from the District Attorney's office, and Mr. Wayne Lipecky, the appellant's attorney on the Pennsylvania state law charges, were all present. Prior to the examination, Mr. Lipecky noted that he did not represent appellant with regard to the Kentucky bank robbery and that appellant had not been officially charged with bank robbery.
 
 
 5
 Mr. Lipecky offered to stay during the questioning on the bank robbery, but appellant replied, "It doesn't make no difference." When Lipecky was preparing to leave, he asked the appellant: "Do you think it is necessary for me to be here?" Appellant answered: "No, that is okay. Go ahead."
 
 
 6
 Before appellant discussed the bank robbery, Agent Lintz read him his rights and had him sign a warning and waiver of rights form. At no point did appellant request an attorney for the federal charge. Appellant then confessed to the bank robbery, giving the name of his accomplice, the type of car they stole, and describing how he stayed in the woods for three days and buried his clothes and sleeping bag. He did not, however, remember the name of the bank. Lintz met with the appellant once again to clarify some details of the March 16 statement. Appellant was read his rights, which he waived.
 
 
 7
 Appellant next met with federal authorities on September 10, 1987, when he testified before the grand jury. Prior to his testimony, appellant was advised by Lintz, Special Agent Gary Perkins, and Assistant United States Attorney Terry Cushing of the procedures that would be followed. Appellant again did not request an attorney. During the grand jury proceedings, appellant was questioned by an Assistant United States Attorney who advised him of his rights, including the right to an attorney. Appellant waived those rights and testified about the Kentucky bank robbery.
 
 
 8
 The following day, appellant voluntarily accompanied two FBI agents to Bradfordsville, Kentucky. He pointed out various sights he remembered from his trip in November 1985, identified the bank he robbed, and took the agents to the wooded area where he had camped out. The agents found a sleeping bag and a canteen that the appellant had abandoned. Appellant was advised of his rights at the start of the trip, but he waived them. He never indicated that he wanted an attorney.
 
 
 9
 Appellant was indicted for the armed robbery of the Kentucky bank on October 6, 1987. A suppression hearing was held on January 12, 1988, and appellant's motion to suppress was denied. Appellant then pled guilty while reserving his right to appeal the district court's adverse ruling on his motion to suppress. Appellant was then sentenced to twenty-five years in prison.
 
 
 10
 The appellant contends that he was denied his right to counsel when he gave incriminating statements in this case.[2] At the suppression hearing, appellant testified that he requested an attorney each time he spoke with law enforcement officials. Chief Harrington, Assistant United States Attorney Cushing, and Special Agents Lintz, Perkins, and Lawzader all testified that appellant never requested counsel. Chief Harrington indicated also that Caldwell implicated himself in the bank robbery before being interviewed by the FBI. Whether appellant asked for an attorney is a factual determination which should not be disturbed unless clearly erroneous. Boles v. Foltz, 816 F.2d 1132, 1136 (6th Cir.), cert. denied, 108 S.Ct. 167 (1987). "Findings of fact are 'clearly erroneous' only when the reviewing court 'is left with a definite and firm conviction that a mistake has been committed.' " United States v. Jabara, 644 F.2d 574, 577 (6th Cir.1981) (quoting United States v. United States Gypsum Co., 333 U.S. 364 (1958)). The government bears the burden of proving the voluntariness of a confession by a preponderance of the evidence. Edwards v. Arizona, 451 U.S. 477 (1981); Lego v. Twomey, 404 U.S. 477 (1972). We are not persuaded that the trial court's denial of appellant's motion to suppress was clearly erroneous.
 
 
 11
 While the law enforcement agents told consistent stories in their testimony, appellant's testimony was replete with contradictory statements. For example, appellant testified that he saw Agent Lintz four or five times between March 10 and March 16. Everyone else agreed that Lintz did not meet with the appellant between March 10 and March 16. In addition, the appellant testified that he requested an attorney on March 16. The transcript of that proceeding, however, shows no such request. When the state attorney asked appellant if he should stay, appellant responded that it did not make any difference to him. During his meetings with the various federal officials, the district court found that appellant was always advised that he was under no obligation to speak.
 
 
 12
 Appellant himself volunteered information about the Kentucky bank robbery. That robbery had been unsolved for almost two years, and appellant was not a suspect. It is apparent that he cooperated with officials in an attempt to serve his time for the Pennsylvania burglary in a federal prison and to serve concurrent rather than consecutive sentences. When sentenced on the federal Kentucky charge first, he apparently changed his mind about cooperating.
 
 
 13
 For the reasons stated, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 Appellant took a hostage during the Pennsylvania burglary; the Pennsylvania offenses involved serious state charges
 
 
 [2]
 The government notes that in his original motion to suppress, appellant claimed that his statements were induced by promises of leniency and that he was not promptly taken before a magistrate. He did not allege that he had requested and been denied counsel. This later contention was raised for the first time at the suppression hearing. Brief of Appellee at 8 n. 1. Caldwell does not contest this