**Ferris Wayne GRIGGS, Petitioner,**

v.

**STATE OF KANSAS, et al., Respondents.**

**No. 92–3157–DES.**

United States District Court,
D. Kansas.

Feb. 16, 1993.

Ferris Wayne Griggs, pro se.

JaLynn M. Copp, Office of the Atty. Gen., Topeka, KS, for respondents.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter comes before the court on petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at the Lansing Correctional Facility, Lansing, Kansas, was convicted of rape in April, 1989. Petitioner was sentenced to a term of fifteen to thirty years. In this action, petitioner challenges his conviction and claims that there was insufficient evidence for a rational factfinder to find him guilty beyond a reasonable doubt.

Having reviewed the record in this matter, the court makes the following findings and order.

*Factual Background*

The victim in the case was a 31 year old woman with limited or barely average intelligence.[1] Petitioner saw the victim walking in Kansas City, offered her a ride and drove her to his apartment in Spring Hill, Kansas. Once in the apartment, the victim claims she was forced to have sexual intercourse with petitioner even though she told him to leave her alone. The victim sought help from individuals nearby and eventually was aided by a local police officer.

Petitioner was charged with the crime of rape on alternative statutory theories: (1) the victim was overcome by force or fear; or (2) the victim was incapable of giving consent due to mental deficiency or disease which was known or reasonably apparent to petitioner. K.S.A. 21–3502. Petitioner argues that when there is insufficient evidence to convict on one of two presented alternative theories and the jury returns a general verdict, the conviction must be reversed.

Petitioner makes no argument that the evidence was insufficient as to the first theory, force or fear, but challenges the second alternative claiming the state did not prove beyond a reasonable doubt that the victim was incapable of giving consent because of mental deficiency or disease and that petitioner knew of the condition or the condition was reasonably apparent to him.

The testimony at trial was that the victim suffered from epilepsy, which resulted in blackouts; dystymia, an affective disorder which results in depressive states; and a borderline personality disorder which results in the inability to use one's knowledge in certain situations. The combination of these disorders results in infantile responses and behavior more on the level of a 12 or 13 year old than a 31 year old. There was also testimony that because of these disorders the victim had a diminished capacity to consent.

Petitioner knew the victim suffered from epilepsy because she told him. In addition, the victim told petitioner she had tried to commit suicide. Petitioner admitted he thought the victim was slow and that she had a mental problem.

The Kansas Court of Appeals held that this evidence was sufficient to convict petitioner on the second theory, —— Kan.App.

---

1. One expert estimated the victim's IQ at 82. Another estimated her IQ at 100.

——, 794 P.2d 1179 (1990). The Kansas Supreme Court denied the petition for review.

*Discussion*

■ A claim that the verdict was against the weight of the evidence is not of constitutional dimension unless the record is so devoid of evidentiary support that a due process issue is raised. *Mapp v. Warden,* 531 F.2d 1167, 1173–74 n. 8 (2d Cir.), *cert. denied,* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976). The federal habeas court's role in collateral review of the state record to determine whether the conviction satisfies due process is to consider whether there was sufficient evidence to allow any rational factfinder to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Cordoba v. Hanrahan,* 910 F.2d 691 (10th Cir.), *cert. denied* 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990).

■ Petitioner relies on *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) for his argument that the conviction must be reversed because there was insufficient evidence on the alternative theory that the victim was incapable of giving consent because of mental deficiency or disease.[2] The court refutes this argument because, like the Kansas Court of Appeals, this court finds sufficient evidence to support petitioner's conviction on either alternative theory.

■ A state court's findings are presumptively correct and are given deference because that court is in the best position to assess credibility and view all the facts as they are alleged. *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). 28 U.S.C. § 2254(d). Here, there was more than sufficient evidence in both quality and quantity presented by the prosecution to warrant the jury's verdict.

The victim clearly suffered from several mental disorders and epilepsy which could render her unconscious and confused during and after blackouts. The victim shared this information with the petitioner and the petitioner acknowledged that he knew she was slow and had mental problems. Petitioner now argues he had no knowledge of the victim's mental position and that the state's proof was lacking.

**2.** The viability of *Zant* and similar cases has recently been brought into question. *Zant* is one of a long line of cases descended from *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). In *Stromberg,* the defendant was charged in one count of violating a California statute which prohibited the display of a red flag in a public place for any of three purposes: (1) as a symbol of opposition to organized government; (2) as an invitation to anarchistic action; or (3) as an aid to seditious propaganda. *Id.* at 361, 51 S.Ct. at 533. The jury, which had been instructed that it could convict if it found the defendant guilty of violating any of the three purposes, returned a conviction on a general verdict. *Id.* at 363–64, 51 S.Ct. at 534. Although the California appellate courts questioned the constitutionality of the first purpose, they upheld the conviction by severing that purpose from the other two. The United States Supreme Court reversed finding that "the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld." *Id.* at 368, 51 S.Ct. at 535. The meaning and applicability of *Stromberg,* and its progeny, have been seriously questioned in *Griffin v. United States,* —— U.S. ——, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). In *Griffin,* the Court held that if there was sufficient evidence to support any object of a multiple-object conspiracy charge, even if evidence was lacking for the other objects, a conviction on general verdict could stand. The court reasoned that although a jury is generally not equipped to determine whether a theory of conviction is contrary to law, such as the case in *Stromberg,* a jury is well equipped to analyze facts and determine the sufficiency of the evidence. *Id.* at ——, 112 S.Ct. at 474.

"It is one thing to negate a verdict that, while supported by the evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient." *United States v. Townsend,* 924 F.2d 1385, 1414 (7th Cir.1991).

Under *Griffin,* petitioner's conviction would be upheld even if one of the alternative theories was unsupported by the evidence. See *State v. Grissom,* 251 Kan. 851, 840 P.2d 1142, 1170–71 (1992) (the decision in *Griffin* means the state is no longer bound by its previous interpretation of *Stromberg* and its holding in *State v. Garcia,* 243 Kan. 662, 763 P.2d 585 (1988) which is disapproved).

In *Kiem v. State,* 13 Kan.App.2d 604, 777 P.2d 278, 280–81 (1989), the Kansas Court of Appeals held that the language of K.S.A. 21–3502, the statute here in question "sufficiently warns a person of common intelligence that engagement in sexual intercourse with one who is mentally handicapped to a degree that he or she cannot understand the nature of engaging in the act is prohibited." In addition, the court concluded that under most circumstances the mental incapacity to consent is apparent in ordinary social intercourse. Finally the court held that further questioning to determine if one's partner understands the nature and consequences of the act of sexual intercourse may be necessary and is appropriate under the statute.

In this case, petitioner had determined from ordinary social intercourse with the victim that she was slow and had a mental problem. Petitioner was on notice and, under the court of appeals interpretation of the statute, should have further explored the issue with the victim before engaging in sexual activity.

"Federal Courts are bound by a state court's interpretation of a state statute unless it is inconsistent with fundamental principles of justice." *Smith v. Atkins,* 565 F.Supp. 721, 739–40 (D.Kan.1983). Here the court of appeals has interpreted K.S.A. 21–3502(1)(c) and this court finds no violation of the principles of justice which would warrant interference with that interpretation. Petitioner clearly had his concerns about the mental stability and ability of the victim. As such he should have attempted to elicit additional information concerning the victim's mental status.

This court finds that there was sufficient evidence from which a rational factfinder could find the essential elements of the crime of rape "when the victim is incapable of giving consent because of mental deficiency or disease, which condition was known by the offender or was reasonably apparent to the offender."

IT IS THEREFORE BY THE COURT ORDERED that the petition for writ of habeas corpus is dismissed and all relief denied. The clerk of the court is directed to transmit copies of this Memorandum and Order to petitioner and respondent.