**Michael CRENSHAW, # 270492, Petitioner,**

v.

**Paul RENICO, Respondent,**

**No. CIV. 02–CV–70518–DT.**

United States District Court, E.D. Michigan, Southern Division.

April 7, 2003.

Michael Crenshaw, St. Louis, MI, Pro se.

Brenda E. Turner, Raina I. Korbakis, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent.

## OPINION AND ORDER DENYING THE PETITIONS FOR WRIT OF HABEAS CORPUS

EDMUNDS, District Judge.

### I. *Introduction*

Michael Crenshaw, ("Petitioner"), presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se,* petitioner challenges the legality of his convictions after a bench trial before Judge David P. Kerwin in the Recorder's Court for the City of Detroit of one count of first degree murder, M.C.L. § 750.316(1)(a),and one count of possession of a firearm during the commission of a felony (felony firearm). M.C.L. § 750.227b. Petitioner was sentenced to life imprisonment without possibility of parole for the murder conviction and to a mandatory consecutive two year term for the felony firearm conviction. The petition raises claims of insufficient evidence, verdict against the great weight of the evidence, coerced confession, and an unrecorded confession. The Court concludes for the following reasons that the petition must be denied.

### II. *Factual Background*

The Michigan Court of Appeals summarized the facts of Petitioner's case as follows:

On October 31, 1997, Kimberly Samuels heard a gunshot in the parking lot. She looked out her window and saw a man being chased by a group of people. Approximately five to ten minutes after the shooting, the victim, Michael Brown arrived at Samuels' home. They spoke of what Samuels saw when the doorbell rang. Four men, including defendant, were at the door, carrying handguns and an AK-47. Brown let them into the house. The men had a discussion with Brown, but then left the home. Five minutes later there was a knock on Samuels' bedroom window. Brown let defendant and his brother into the home through the patio door. Minutes later, the other two men returned to the home. There was a second discussion then the four men indicated that they were leaving. Suddenly, defendant stood over Brown and said, "I hate that I have to do this, clown." "Clown" was Brown's nickname. Defendant shot Brown in the head. Defendant's brother then shot Samuels. Brown was shot multiple times and died from his injuries. Samuels was shot eight times, but survived. On cross-examination, Samuels acknowledged that she did not see the shot fired by defendant enter Brown's head.

Defendant testified that one of the members of the group told Brown about the shooting, and therefore, Brown would have to be killed. Defendant did not want to shoot Brown but did so under duress because of threats from other members. In fact, he fired the gun once at Brown, but it hit the wall. He then dropped the gun and fled the

scene. Defendant acknowledged that he had given a statement to police after the shooting, but denied that he admitted killing Brown. The trial court found that defendant consciously fired bullets into the head of Brown despite the opportunity to give it a second thought. The trial court also denied defendant's motion for acquittal or new trial. The trial court explained that Samuels' testimony was overwhelmingly credible, while defendant's testimony was entirely lacking credibility.

*People v. Crenshaw*, No. 2146962000 WL 33415225 at *1 *(per curiam )*(Mich. App. July 28, 2000).

### III. *Procedural History*

Petitioner was convicted of first degree murder and felony firearm on July 15, 1998, after a bench trial in the Recorder's Court for the City of Detroit. Petitioner was sentenced on August 13, 1998, to life imprisonment without possibility of parole for first degree murder and a consecutive two year prison term for felony firearm.

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, raising the following claims:

I. Defendant's conviction must be reversed because the evidence presented at trial was insufficient to convict the defendant, and the verdict was against the great weight of the evidence presented at trial.

II. Whether the trial court violated Defendant's due process rights by admitting Defendant's coerced confession to the police as evidence at trial.

III. Whether the trial court should have suppressed Defendant's confession where the police failed to make an audio or video recording.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished, *per curiam* decision. *People v. Crenshaw*, 2000 WL 33415225; The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Crenshaw*, 463 Mich. 984, 624 N.W.2d 191 (2001).

On or about February 27, 2002, Petitioner filed the present petition for a writ of habeas corpus raising the following claims for relief:

I. Petitioner's conviction must be reversed because the evidence presented at trial was insufficient to convict the petitioner, and the verdict was against the great weight of the evidence presented at trial.

II. Whether the trial court violated Petitioner's due process rights by admitting Petitioner's coerced confession to the police as evidence at trial.

III. Whether the trial court should have suppressed Petitioner's confession where the police failed to make an audio or video recording.

Respondent has filed an answer to the petition and contends that Petitioner's claims are not cognizable and/or lack merit.

### IV. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998); *Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistin-

guishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11, 120 S.Ct. 1495 (emphasis in original).

With this standard in mind, the Court proceeds to address the petition for a writ of habeas corpus.

---

1. 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

## V. *Discussion*

### A. Insufficient Evidence and Verdict Against Great Weight of the Evidence Claims

Petitioner contends that his convictions are not supported by sufficient evidence.

 The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The issue before this Court is whether sufficient evidence was presented to the trial judge from which a reasonable factfinder could find that the essential elements of the crimes were proven beyond a reasonable doubt.[2] The appropriate standard of review in a federal habeas corpus proceeding involving a claim of insufficiency of evidence in a state criminal conviction is whether, after reviewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review recognizes the trier of fact's responsibility to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia, supra* at 318, 99 S.Ct. 2781.

 The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Glasser v. United States*, 315 U.S. 60, 80,

62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). *Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir.1993); *cert denied*, 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 ( 1994). Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *United States v. Saunders*, 886 F.2d 56 (4th Cir.1989). The habeas court does not substitute its judgment for that of the finder of fact. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).

 The habeas court must review all of the evidence in the record and determine whether a reasonable jury or other fact finder could have found guilt beyond a reasonable doubt. "The evidence must afford a substantial basis from which a fact in issue can reasonably be inferred." *Spalla v. Foltz*, 615 F.Supp. 224, 227 (E.D.Mich.1985), *aff'd*, 788 F.2d 400 (6th Cir.), *cert. denied*, 479 U.S. 935, 107 S.Ct. 410, 93 L.Ed.2d 362(1986). Circumstantial evidence from which a reasonable inference of guilt beyond a reasonable doubt may be drawn is constitutionally sufficient. *Id.; Evans–Smith v. Taylor*, 19 F.3d 899, 909 (4th Cir.), *cert. denied*, 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 211 (1994)(holding that circumstantial evidence that Evans–Smith strangled his wife and staged a fake robbery-rape scene to conceal his crime was insufficient to support his murder conviction).

In the present case, the Michigan Court of Appeals resolved this claim as follows:

---

**2.** In general, the prosecution presents the evidence of the defendant's guilt, and of course, the defense has no duty to present any evidence at all. However, where the defense does present evidence, this evidence also may directly or inferentially support a reasonable finding of guilt. For instance, if a defense witness called to provide alibi evidence actu-

ally testified she never saw the defendant the day of the crime, or worse (for the defendant) testified she saw the defendant and victim together shortly before the crime. In the present case, Petitioner testified on his own behalf. However, the factfinder, in this case the trial judge, was not required to interpret this evidence favorably to the defendant.

Defendant first argues that there was insufficient evidence "for conviction" [of first degree murder]. We disagree. In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether a rational factfinder could conclude that the essential elements of the crime were proved beyond a reasonable doubt. *People v. Terry*, 224 Mich.App. 447, 452, 569 N.W.2d 641 (1997). To convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v. Kelly*, 231 Mich.App. 627, 642, 588 N.W.2d 480 (1998). Premeditation and deliberation may be inferred from the circumstances surrounding the killing and require sufficient time to allow the defendant to take a second look. *Id.* Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence of premeditation and deliberation to satisfy the first-degree murder conviction. *Terry, supra.* The men came to the residence and knew that Brown was aware of the earlier shooting. The men returned a short time later to the home, and defendant killed Brown just prior to departing the home. Accordingly, defendant's argument is without merit.

*People v. Crenshaw*, 2000 WL 33415225 at *1 (footnote omitted).

 Evidence was presented by an eyewitness who testified that she saw Petitioner shoot the victim (Michael "Clown" Brown) in the head at very close range. Further evidence was presented that Petitioner and his accomplices committed the murder after finding Brown, whom they believed had knowledge of their commission of another murder, at Kimberly Samuels's apartment. After speaking to Brown, Petitioner and the others left, then returned about five minutes later and executed Brown.

Petitioner testified that he fired in Brown's direction, but missed and that he only fired because Joey Curt (also known as Jokiva Owens) held an AK–47 to his back and threatened to kill him unless he killed Brown. However, the trial judge was not obligated to believe Petitioner's testimony. The trial judge found that Petitioner's testimony was not credible and that Kimberly Samuels's testimony, which stated that Petitioner shot Clown Brown in the head, was very credible.

Consequently, a review of the evidence and the Michigan Court of Appeals's decision shows that Petitioner's convictions are supported by constitutionally sufficient evidence. The Michigan Court of Appeals decided Petitioner's sufficiency of the evidence on the basis of the correct federal constitutional standard of review, as incorporated into Michigan law and correctly stated the elements of first degree premeditated murder, the only one of Petitioner's convictions which he challenged. In the light of the evidence presented at trial, the Michigan Court of Appeals's decision finding that Petitioner's conviction is supported by sufficient evidence is a reasonable application of controlling federal law. Therefore, this claim lacks merit and shall be denied.

Petitioner also contends that his conviction was against the great weight of the evidence. The Michigan Court of Appeals decided this claim as follows:

Defendant next argues that the verdict was against the great weight of the evidence. We disagree. "A new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642, 576

N.W.2d 129 (1998). Specifically, defendant takes issue with the credibility of Samuels. Where resolution of an issue involves the credibility of two diametrically opposed version of events, the test of credibility rests in the trier of fact. *Lemmon,* supra at 646–647, 576 N.W.2d 129. The trial court found that Samuels' testimony was inherently credible despite minor inconsistencies and that defendant's testimony was entirely lacking in credibility. Accordingly, the verdict was not against the great weight of the evidence, but hinged on the trier of fact's assessment of credibility. *Id.*

*People v. Crenshaw,* 2000 WL 33415225 at *2.

This claim does not entitle Petitioner to habeas relief for two reasons.

■■■■■ First, a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir. 1985); *See also Thomas v. McLemore,* 2001 WL 561216, * 5 (E.D.Mich. March 30, 2001) (Borman, J.). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Griggs v. State of Kansas,* 814 F.Supp. 60, 62 (D.Kan.1993). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *United States ex. rel. Victor v. Yeager,* 330 F.Supp. 802, 806 (D.N.J.1971). Because there was sufficient evidence to convict Petitioner of first degree premeditated murder, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief.

■■■■ Second, review of the evidence shows that the trial judge's verdict was not against the great weight of the evidence. On the contrary, the trier of fact found that Kimberly Samuels's highly inculpatory testimony was very credible. Also admitted into evidence was Petitioner's statement in which he admitted shooting Michael (Clown) Brown in the head after helping stalk Brown because he had witnessed another shooting. Trial Transcript ("Tr.") dated July 14, 1998 at 87–88. Consequently, the guilty verdict was not against the great weight of the evidence.

Therefore, this claim shall also be denied.

## B. *Miranda* and Coerced Confession Claims

Petitioner contends that his coerced confession was admitted at trial and that his confession was given before he was informed of his *Miranda* rights, denying him due process of law. Respondent contends that these claims lack merit.

Petitioner contends that his confession was admitted in violation of the constitutional principles set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because he did not receive warnings before he made his statement. Petitioner also contends that his will was overborne and his confession coerced because he was interrogated for five or six hours without being allowed to use the bathroom; he requested an attorney, but was told that one would be provided after he made a statement; and he had dropped out of school in the tenth grade and did not read well.

The Michigan Court of Appeals rejected Petitioner's challenges to admission of his confession as follows:

Defendant next argues that his due process rights were violated by the trial court's denial of his motion to suppress involuntary statements. We disagree. The voluntariness of a statement is to be determined using a totality of the cir-

cumstances analysis. *People v. Sexton*, 458 Mich. 43, 67–68, 580 N.W.2d 404 (1998). The voluntariness of a confession is a question for the trial court, but we examine the entire record and make an independent determination of voluntariness. *Id.* at 68, 580 N.W.2d 404. The trial court's decision will not be disturbed unless it is clearly erroneous. *Id.* A decision is clearly erroneous when it leaves this Court with a definite and firm conviction that a mistake has been made. *People v. Hampton*, 237 Mich. App. 143, 148, 603 N.W.2d 270 (1999). Review of the *Walker*[3] hearing reveals that defendant asserted that he wished to go to the bathroom, but was not allowed to do so. Defendant did not indicate that he was forced to make a statement in order to use the facilities. The trial court concluded that the statement was voluntary, and there was no basis presented for a conclusion to the contrary. We cannot conclude that the trial court's decision was clearly erroneous. *Hampton, supra.*

*People v. Crenshaw*, 2000 WL 33415225 at *2.

Law enforcement officers must give "*Miranda* warnings" before interrogating individuals in custody. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda*, the Supreme Court held that an individual in police custody may not be interrogated until and unless he is first advised that he has the right to remain silent; that anything he says may be used against him; that he has the right to an attorney; and that an attorney will be appointed for him if he cannot retain one. These warnings are an "absolute prerequisite to interrogation," said the court, 384 U.S. at 467, 86 S.Ct. at 1624, and without the warnings, the fruits of a custodial interrogation are inadmissible at trial. The Supreme Court held that: "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege.... But unless and until such warnings are demonstrated ..., no evidence obtained as a result of interrogation can be used against him." *Miranda v. Arizona*, 384 U.S. at 478–479, 86 S.Ct. at 1630 (footnote omitted). *Miranda*, then, creates procedural safeguards to secure the Fifth Amendment privilege against self-incrimination while a person is subject to custodial interrogation.

■ Petitioner's *Miranda* claim is defeated by review of the transcript of his *Walker* hearing and review of the decision of the Michigan Court of Appeals. Evidence was presented at the *Walker* hearing that Petitioner was advised of his *Miranda* rights before he was interrogated, that he read those rights aloud himself, and he initialed a form indicating that he was informed of and understood each of those rights. The trial judge found as a matter of fact that the officer's version of these events was credible and Petitioner's was not. On this factual basis, which Petitioner has not presented clear and convincing evidence to contradict, the Michigan Court of Appeals decision rejecting his *Miranda* claim is a reasonable determination of the facts and a reasonable application of controlling federal constitutional law. Therefore, this claim lacks merit.

■ The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A confession is considered involun-

---

**3.** *People v. Walker (On Rehearing)*, 374 Mich. 331, 132 N.W.2d 87 (1965).

tary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988).

The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane,* 516 U.S. 99, 108–11, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Those circumstances include: 1)Police Coercion (a "crucial element"); 2) Length of Interrogation; 3) Location of Interrogation; 4) Continuity of Interrogation; 5) Suspect's Maturity; 6) Suspect's Education; 7) Suspect's Physical Condition & Mental Health; and 8) Whether Suspect Was Advised of *Miranda* Rights. *Withrow v. Williams,* 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167, 107 S.Ct. 515, 93 L.Ed.2d 473 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). The burden of proving that a confession was obtained involuntarily rests with the petitioner. *Boles v. Foltz,* 816 F.2d 1132, 1136 (6th Cir.1987). Voluntariness need only be established by a preponderance of the evidence. *Id.*

Review of the record of Petitioner's *Walker* hearing shows that Petitioner's statement was not coerced. Petitioner testified that he requested to use the bathroom several times. but was told that there was no male officer available to take him there. Petitioner did not allege that he admitted murdering Michael Brown so the police would let him use the bathroom. Further, Petitioner did indicate the length of time which passed before he was allowed to use the bathroom. Petitioner did not allege in his testimony that the police threatened or harmed him physically, coerced or browbeat him psychologically, or that his confession was induced by false promises of leniency. Petitioner testified that he could not read, but this testimony was contradicted by the officer's testimony and by the fact that Petitioner initialed the rights form appropriately. Further, even if Petitioner could not read, this would render his verbal confession to shooting Michael Brown in the head involuntary.

Upon review of the record and the Michigan Court of Appeals decision finding that Petitioner's confession was voluntarily made after being informed of his federal constitutional rights, this Court concludes that the Michigan Court of Appeals decision rejecting Petitioner's coerced confession claim is a reasonable application of federal constitutional law. Therefore, this claim lacks merit and shall be denied.

### C. Unrecorded Confession Claim

Petitioner contends that his confession should have been suppressed because the police failed to make an audio or video recording of it. Respondent contends that this claim fails to set forth an arguable violation of Petitioner's federal constitutional rights.

The Michigan Court of Appeals resolved this claim as follows:

Lastly, defendant argues that his statement to the police should have been

suppressed because police failed to make an audio or video recording of the statement. In *People v. Fike,* 228 Mich.App. 178, 183, 577 N.W.2d 903 (1998), we declined to mandate police practice in the absence of legislation addressing the subject. Furthermore, defendant has failed to identify material misconduct or demonstrate that the failure to record his statement was "fundamentally unfair." *Id.* at 186, 577 N.W.2d 903. Accordingly, defendant's request is without merit.

*People v. Crenshaw,* 2000 WL 33415225 at *2.

The Michigan Court of Appeals decided this claim on the basis of state law, finding 1) that there was no state law requirement that police interrogations and/or statements or confessions of suspects be recorded and 2) that Petitioner failed to show that material misconduct occurred and/or that failure to record his statement was fundamentally unfair.

Petitioner has not alleged that the United States Supreme Court has established that criminal suspects have a constitutional right to have their interrogations and/or statements recorded through audio and/or video recording. This Court's research indicates that the United States Supreme Court has never established such a right. Habeas relief may only be granted where a petitioner's federal constitutional rights as determined by the United States Supreme Court have been violated and he or she is in custody pursuant to a judgment which is based on an unreasonable determination of the facts, and/or contrary to or an unreasonable application of, federal constitutional law as determined by the United States Supreme Court.

Petitioner's unrecorded confession claim is not based on an alleged violation of a federal constitutional right. Therefore, this claim is not cognizable in federal habeas corpus and may not be the basis of habeas relief. Consequently, this claim is denied.

## VI. *Order*

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED WITH PREJUDICE.**