**David Zef CUKAJ, Petitioner,**

v.

**Millicent WARREN, Respondent.**

**No. CIV.A. 03–CV–40086–FL.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 24, 2004.

David Cukaj, Thumb Correctional Facility, Lapeer, MI, Pro se.

Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Janet Van Cleve, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Warren Millecent, Warden, Respondent.

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

GADOLA, District Judge.

David ZefCukaj ("Petitioner"), a state prisoner presently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of extortion following a jury trial in the Macomb County Circuit Court in 1998 and was sentenced to 5 to 20 years imprisonment in 1999. For the reasons stated below, the Court will deny the petition for a writ of habeas corpus.

### I. *Facts*

Petitioner's conviction arises from his alleged threats to harm Paulin Selmani ("Selmani") and his family unless Selmani paid him. Petitioner was initially charged with three counts of extortion for threats to Selmani, to his girlfriend and wife Nichole, and to their child. The charge related to the child was dismissed and Petitioner was tried on the remaining two counts in December, 1998.

At trial, Selmani testified as follows. He came illegally to the United States from Albania in 1994. Selmani knew Petitioner in Albania and lived with Petitioner when he arrived in the United States.

Selmani borrowed $1,000 from Petitioner to pay an immigration lawyer and paid the money back in cash within nine months. Selmani thought Petitioner would make a good husband for his sister, Nelbea. Petitioner subsequently paid for her to come illegally to the United States from Albania in 1996. Nelbea left Petitioner and moved to Canada in August, 1997.

In September, 1997, while Selmani was working for Supreme Gear in Roseville, Michigan, Petitioner came to Selmani's workplace and demanded money from Selmani because Nelbea had left him. Petitioner returned to Supreme Gear a month later and demanded $50,000 within one month. Selmani felt threatened by Petitioner and reported this incident to the police. Selmani further testified that he was living in Clinton Township with his wife Nichole and their son on January 1, 1998. The doorbell rang; Selmani answered the door and saw Petitioner. They spoke in Albanian about who was to blame for Nelbea leaving him and Petitioner demanded money. When Nichole came downstairs, Petitioner said, in English, that he wanted $15,000 or he would kill Selmani and his family. Selmani believed that Petitioner was serious, so he reported the incident to the police and moved his family to Chesterfield. Selmani also testified that Petitioner telephoned him at his new residence on March 19, 1998 and said, "I want my money or I will have your head." Selmani also reported this incident to the police and again moved due to Petitioner's threats.

Nichole testified that she was living in Clinton Township with Selmani and their son on January 1, 1998. She heard the doorbell ring and Selmani answered the door. She heard arguing in Albanian, picked up their son and a cell phone, and went downstairs. When she saw Petitioner, he smiled at her and said, in English,

that he was going to blow them up if Selmani did not pay him $15,000. She was afraid, so she went upstairs and telephoned the police. They moved a few weeks later due to their fear. On March 19, 1998, they received a threatening telephone call from Petitioner at their new residence and reported it to the police. Police testimony corroborated that Selmani reported Petitioner's threats and demands for money on September 2, 1997, January 1, 1998, and March 19, 1998.

Petitioner testified in his own defense at trial and denied committing the crime. He testified that he came illegally to the United States from Albania in 1993, and was subsequently authorized to work. Selmani, whom Petitioner knew in Albania, lived with him from October, 1995 to March, 1996. He loaned Selmani $1,500 to pay attorney and other expenses, but Selmani only paid him back $750. Petitioner loaned Selmani the money because their families had agreed that Petitioner would marry Selmani's sister Nelbea. Contrary to Selmani's account, Petitioner denied paying for Nelbea's travel to the United States. Petitioner did admit that on January 1, 1998, he went to Selmani's apartment, but stated that his visit was "at [Selmani's] invitation to celebrate the holiday." Pet. Br. at 9. Petitioner claimed that Selmani "came to the front door ... said he was sorry, but he did not have the money." Id. Petitioner further claimed that he "never threatened Selmani," never requested repayment of the $1,500 loan, and never asked "for $15,000 or $50,000" from Selmani. Id. Petitioner admitted to visiting Selmani at Superior Gear on two occasions and telephoning Selmani's brother, Edward Selmani, but denied threatening him.

In rebuttal, Michael McGary, the foreman at Supreme Gear testified that Petitioner came to his workplace in Sep-

tember, 1997 looking for Selmani. The production manager would not let him in and Petitioner refused to leave until McGary stepped in to assist the manager. Selmani was not at the jobsite that day. McGary stated that Selmani missed work because he was afraid of Petitioner.

Edward Selmani, Selmani's brother, testified that his family did not pay for his sister Nelbea's travel to the United States to marry Petitioner. He said that Nelbea left Petitioner and moved to Canada in August, 1997. Edward Selmani also testified that Petitioner called him several times on May 12, 1998 and threatened to kill Selmani if Petitioner was not paid the money.

At the close of trial, the jury found Petitioner guilty of extortion of Selmani and acquitted him of extortion of Nichole. Petitioner filed a motion for new trial based on alleged juror misconduct. In support of that motion, Petitioner submitted the affidavit of a male juror who stated that he was a holdout for acquittal during deliberations. On the last day of trial, the other jurors allegedly pressured him to convict Petitioner, so he remained in the jury room while they went to lunch. When they returned from lunch, they told him that they had observed the victims crying in a conference room. The jurors questioned why the victims would be crying if they had not been extorted. The juror then decided to "throw in the towel" and vote for a guilty verdict. Following a hearing on the matter, the trial court denied the motion.

## II. *Procedural History*

Following sentencing with the Macomb County Circuit Court, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising numerous claims of error, including those raised in the present petition. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Cukaj*, No. 219683, 2001 WL 1256098 (Mich.Ct.App. Oct.19, 2001) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which was denied. *People v. Cukaj*, 466 Mich. 875, 645 N.W.2d 667 (2002).

Petitioner filed the instant petition on April 14, 2003 asserting the following claims:

I. There was insufficient evidence to support the conviction.

II. The verdict was against the great weight of the evidence.

III. The trial court erred in denying Petitioner's motion for new trial on grounds of both prosecutorial and juror misconduct.

IV. The trial court erred in excluding evidence that the alleged victim did not know Petitioner to have a gun or other weapon with which to carry out the alleged threats because the alleged victim's fearful state of mind was relevant to the charge of extortion, and because the error was prejudicial and deprived Petitioner of a fair trial.

V. The trial court's exclusively judge-conducted *voir dire* was a *per se* violation of Petitioner's right to a fair trial and impartial trial by jury.

VI. The inadmissible hearsay and opinion testimony of a police detective to the effect that he believed the Petitioner was avoiding him after he obtained an arrest warrant was manifest error, prejudicing Petitioner's right to a fair trial.

VII. The prosecutor committed misconduct when he elicited testimony that the Petitioner failed to volunteer information regarding the case.

VIII. The prosecutor committed misconduct when he revealed to the jurors that he was in possession of a tape recording of the Petitioner threatening the brother of the complaining witness.

IX. The trial court erred by preparing to give the jury a supplemental instruction on illegal intent, as the jury had requested, and then by failing to instruct the jury on the matter before the jury returned their verdict.

X. Petitioner was deprived of the effective assistance of counsel in violation of the Sixth Amendment and Constitution 1963, article 1 § 20 through various acts and omissions, including the failure to produce witnesses crucial to the defense, and to elicit critical evidence.

Respondent filed an answer to the petition on September 15, 2003 asserting that Petitioner's claims should be denied on the merits or based on procedural default.

### III. *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court articulated the correct standard of review under the AEDPA. According to the Court:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13, 120 S.Ct. 1495.

In evaluating a state court decision under the "unreasonable application" clause, the Supreme Court further stated that a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 411, 120 S.Ct. 1495. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court

may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.; see also Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

The Supreme Court also clarified that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495. In determining what constitutes clearly established federal law, therefore, a federal habeas court must look to pertinent Supreme Court precedent. Finally, the AEDPA requires that this Court presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

## IV. *Analysis*

### A. *Sufficiency of the Evidence*

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his extortion conviction. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781; *see also Warren,* 161 F.3d at 360. Michigan law defines extortion as:

Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child or another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony.

Mich. Comp. Laws § 750.213. This statute essentially requires (1) a communication, (2) threatening injury or accusation of a crime, (3) with the intent to extort money or compel an act. *People v. Fobb,* 145 Mich.App. 786, 790, 378 N.W.2d 600, 602 (1985).

The Michigan Court of Appeals applied the *Jackson* standard in addressing and rejecting Petitioner's insufficient evidence claim. The court found that Selmani's testimony that Petitioner had orally threatened to kill him and his family if he did not pay him $15,000 or $50,000 was sufficient to support his extortion conviction. *Cukaj,* 2001 WL 1256098 at *1. Having reviewed the record, this Court concludes that the determination of the Michigan Court of Appeals in this regard is a reasonable and consistent application of *Jackson* and of the evidence. The jury could have reasonably determined that Petitioner committed the offense based on the testimony of Selmani, Nichole, and the police officers. Petitioner's insufficient evidence claim essentially challenges the credibility and weight to be accorded the testimony presented at trial. It is well settled, however, that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not

796

affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle,* 703 F.2d 959, 969–70 (6th Cir.1983). Given the evidence at trial, this Court concludes that a rational trier of fact could find Petitioner guilty of extortion beyond a reasonable doubt. Petitioner is not entitled to relief on this claim.

### B. *Great Weight of the Evidence*

■ Petitioner next claims that he is entitled to habeas relief because the verdict was against the great weight of the evidence. A federal habeas court, however, has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence. *See Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir.1985); *Crenshaw v. Renico,* 261 F.Supp.2d 826, 834 (E.D.Mich.2003); *Dell v. Straub,* 194 F.Supp.2d 629, 648 (E.D.Mich.2002). Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised. *See Griggs v. State of Kansas,* 814 F.Supp. 60, 62 (D.Kan.1993). As discussed above, such is not the case here. Habeas relief is thus not warranted on this claim.

### C. *Juror Misconduct Claim*

Petitioner also claims that he is entitled to habeas relief because of the extraneous influence on the jury. It is well settled that the Sixth Amendment right to a jury trial guarantees a criminal defendant a fair trial by a panel of impartial jurors. *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine

the effect of such occurrences when they happen."); *DeLisle v. Rivers,* 161 F.3d 370, 382 (6th Cir.1998) (citing *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). Reviewing courts have recognized that the trial court is in the best position to determine the nature and extent of alleged jury misconduct, as well as the appropriate remedy for any demonstrated misconduct. *See United States v. Gaitan–Acevedo,* 148 F.3d 577, 590 (6th Cir.1998) (citing *United States v. Copeland,* 51 F.3d 611, 613 (6th Cir.1995)). A state court's factual findings concerning jury impartiality are presumed correct and may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *DeLisle,* 161 F.3d at 382 ("we may only overturn a state court's findings of juror impartiality if those findings were manifestly erroneous").

■ Juror testimony regarding the jury's internal processes and deliberations is inadmissible to impeach the verdict unless extraneous influence is alleged to have affected the jury. *Tanner v. United States,* 483 U.S. 107, 117–18, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *United States v. Rigsby,* 45 F.3d 120, 123 (6th Cir.1995). Petitioner alleges an extraneous influence upon the jury based on a juror's affidavit. This affidavit stated that other jurors reported seeing the victims crying during a lunch break, and that this caused him to change his vote to guilty. The Michigan Court of Appeals found that the jurors' observation of the victims crying was an extraneous influence, but concluded that the event did not create a real and substantial possibility that the jury's verdict was affected. The court noted that the jurors had previously observed the victims crying in the courtroom and that exposure to the same conduct outside the courtroom was cumulative information. *See Cukaj,* 2001 WL 1256098 at *2.

■ This Court finds that Petitioner has failed to establish that the decision by the Michigan Court of Appeals is an unreasonable application of or contrary to Supreme Court precedent. Even if the extraneous influence on the jury constituted error, Petitioner is not entitled to relief. For purposes of federal habeas review, a constitutional error that implicates trial procedures is deemed harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999) (harmless error standard announced in *Brecht* applies even if a federal habeas court is the first to review for harmless error); *see also O'Neal v. McAninch,* 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Claims concerning the effect of extraneous influences upon the jury during deliberations are subject to harmless error analysis. *See Mason v. Mitchell,* 320 F.3d 604, 638 (6th Cir.2003). In this case, the observation of the victims crying outside the courtroom was cumulative to what the jury observed inside the courtroom. Additionally, as discussed above, significant evidence of Petitioner's guilt was presented at trial. Petitioner has not shown that the alleged misconduct substantially affected or influenced the jury's verdict. Habeas relief is not warranted on this claim.

### D. *Limit on Cross–Examination and Confrontation Claim*

Petitioner next claims that he is entitled to habeas relief because the trial court refused to allow him to cross-examine Selmani about whether he knew Petitioner to have a gun or other weapon with which to carry out the alleged threats. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.

"The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.,* discredit the witness." *Id.* at 314, 94 S.Ct. 1105.

■ The right of cross-examination, however, is not absolute. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *see also Norris v. Schotten,* 146 F.3d 314, 329–30 (6th Cir.1998). Citing the Confrontation Clause, the Michigan Court of Appeals found Petitioner's claim to be without merit because the trial court excluded such testimony on the basis that it would have opened the door to the prosecutor presenting other facts as to why Selmani may have feared Petitioner, namely that Petitioner had raped and beaten Selmani's sister. Prior to trial, the trial court had ruled such evidence inadmissible unless Petitioner raised the issue. The Court of Appeals noted that Petitioner was otherwise free to question Selmani about his state of mind. *Cukaj,* 2001 WL 1256098 at *2.

This Court concludes that the decision by the Michigan Court of Appeals is neither contrary to nor an unreasonable application of Supreme Court precedent. Petitioner has not shown that his right of confrontation was infringed by the trial court's ruling on this matter. The court had a good reason for limiting Petitioner's cross-examination and Petitioner was still able to challenge Selmani's credibility and state of mind. Petitioner is thus not entitled to relief on this claim.

E. *Procedural Default of Jury Voir Dire, Evidentiary, and Prosecutorial Misconduct Claims*

Petitioner also claims that he is entitled to habeas relief because the trial court conducted the jury voir dire, because the trial court erred in admitting hearsay or opinion testimony by a police officer that Petitioner was avoiding arrest, and because the prosecutor engaged in misconduct. Respondent contends that these claims are barred by procedural default. Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir.1991). In *Wainwright*, the Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. 433 U.S. at 85, 97 S.Ct. 2497.

In such a case, a federal court must determine whether a petitioner has failed to comply with state procedures and whether the state court relied on the procedural default or chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on

either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263–64, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The last reasoned state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803–05, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing Petitioner's claims, the court relied upon a state procedural bar: Petitioner's failure to properly object to the alleged errors at trial. *See Cukaj*, 2001 WL 1256098 at *3–4. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546; *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. 2639. A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223, 108 S.Ct. 1771,

100 L.Ed.2d 249 (1988); *Rust*, 17 F.3d at 161. In this case, Petitioner neither alleges nor establishes cause to excuse his failure to properly object at trial. This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir.1983); *Bell v. Smith*, 114 F.Supp.2d 633, 638 (E.D.Mich.2000).

 Finally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. 2639. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Petitioner has made no such showing. These claims are thus barred by procedural default and do not warrant habeas relief.

## F. *Jury Instruction Claim*

The jury requested a supplemental instruction on illegal intent. Petitioner claims that he is entitled to habeas relief because the trial court failed to give the instruction before the jury returned the verdict. In this case, the Michigan Court of Appeals found that the jury reached a verdict before the trial court was able to give the proposed supplemental instruction. The court concluded that the jury must have determined that it no longer needed the requested instruction such that reversal was not required. *Cukaj*, 2001 WL 1256098 at *4. Petitioner has not presented any evidence to rebut the state court's findings nor has he shown how the failure to give a supplemental instruction on illegal intent rendered his trial fundamentally unfair. Any claim that the proposed instruction discussed by the parties was erroneous is inconsequential given that there is no indication in the record that the jury was so instructed. Petitioner is thus not entitled to relief on this claim.

## G. *Ineffective Assistance of Counsel Claim*

Finally, Petitioner claims that trial counsel was ineffective for failing to effectively cross-examine Nichole, for failing to produce expert translators of French and Albanian, and for failing to produce Petitioner's brother and father as witnesses. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687, 104 S.Ct. 2052. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally

800

competent assistance" in order to prove deficient performance. *Id.* at 690, 104 S.Ct. 2052. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689, 104 S.Ct. 2052. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. 2052. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689, 104 S.Ct. 2052.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* In *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Supreme Court observed that "an analysis focusing solely on outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable is defective." The United States Court of Appeals for the Sixth Circuit has concluded that a reviewing court should focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311 (6th Cir.1996). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 1311–12 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

■ Applying the *Strickland* standard, the Michigan Court of Appeals concluded

that Petitioner had not established that trial counsel was ineffective. *See Cukaj,* 2001 WL 1256098 at *4–5. Having reviewed the record, this Court finds that this decision constitutes a reasonable and consistent application of *Strickland.* First, as to the cross-examination of Nichole, Petitioner has not shown that counsel was deficient for failing to sufficiently question her about her foreign language skills. Nichole specifically testified that Petitioner threatened her family in English. Her ability to understand Albanian or French was therefore not relevant. For this same reason, counsel was not deficient for failing to call expert witnesses in those languages.

■ Petitioner has also failed to establish that defense counsel was ineffective for failing to call Petitioner's brother and father as witnesses. Petitioner has not rebutted the presumption that counsel's decision not to call such witnesses was sound trial strategy. Counsel may have reasonably thought they would not be effective witnesses or that their purported testimony was not relevant. For example, Petitioner claims that his brother would have testified that he witnessed Petitioner's loan of $1,500 to Selmani. Selmani, however, only disputed the amount of the loan, not that a loan was made. Petitioner also claims that his father would have testified that he saw Selmani apologize to Petitioner in November, 1997. Selmani's apology, however, is not relevant to the extortion charges. As Petitioner has not shown that defense counsel's performance was deficient or that he was sufficiently prejudiced under the standard in *Strickland,* habeas relief is not warranted on this claim.

## V. *Conclusion*

For the reasons stated, this Court concludes that Petitioner is not entitled to

801

federal habeas relief on the claims presented. **ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA with this Court within **TWENTY–ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.